Judge Birch
dissenting.
Janny & Co. sued the surviving partner of Colburn and Smith, and garnisheed the bank. It was proven upon the trial below, that prior to, and at the period of the garnisheement, Colburn and Smith were the legal holders and owners of a government bill of exchange for three thousand dollars, regularly drawn upon the bank, which had government funds to meet it, and that it was the universal usage or course of business in the bank to pay all such bills when properly presented. In this ease, it rightfully enough refused to pay the one in question, when presented by a person into whoso hands it had fallen after the murder of Colburn, because it was not properly endorsed to him. The bank, however, made and retained a memorandum of the draft, and before any other disposition was made of it, the plaintiffs below, (appellants here) commenced their suit against Smith, and summoned the bank as garnishee.
It is deemed unnecessary to look further after the bill than to add, in justice to the bank, that it promptly paid the whole of it, when subsequently endorsed by Smith, after his return from Santa Fe, instead of retaining, as it might have done, a sum sufficient to cover the contingent liability to whicli it had been intermediately subjected.
I have met with no adjudications exactly in point, and the case is one upon which, estimated in all its bearings, the wisest and most reflecting may readily disagree. I am of opinion, however, that the limitation of the principle of assignment, which is' relied upon as in the ease of Manderville vs. Welch, 5 Wheat 277, is inapplicable, and should not be entertained under circumstances like the present. Although not informed of the precise nature of the contract which existed between the government and the bank, the custom which is testified to is so accordant with the fitness of things, as to warrant the conclusion that it had bound itself to accept and pay all such demands when properly presented. In the very language of the court in the case alluded to, this is deemed to have been a case in which “ an obligation to accept may be fairly implied from the course of trade, or the course of business between the parties, as a part of their contract.” It is at all events. *588 too absurd, for supposition that it had the legal option of paying or refusing a draft which did not come up to the exact amount from time to-time deposited. Such an option would have been not only inconsistent with the object of disbursing to the creditors of the government the funds it deposited, but its distant paymasters could never have drawn a valid bill, because never knowing the-precise sum embraced in it.. The hank, then, not having the just or moral option alluded to, the mere “ non-acceptance ” of the bill in question, although exempting it from the special liabilities of “ acceptor,” in no. respect changed- its liability for an ultimate proper application of the money which, it thereby had notice was assigned, or set over, to Colburn and Smith..
Looking at it in this light, I cannot doubt the- right of either of theiicreditors,. to instanti, or at any time before its legal transfer to another,, to pursue, such a fund by the usual process of attachment, nor that it was the duty of the hank, after, it was- garnisheed, to have held enough of it to answer die ultimate judgment of the court, which I think should, have been in favor of the plaintiffs. Whatever legal or equitable interest Smith had in the fund was properly open to his creditors, 5 and the plaintiff having relied upon the open legal diligence, upon which our jurisprudence looks with deserved and deserving favor, he bank should; have disregarded any subsequent private arrangement which was entered into, however apparently “ regular upon its faee, ” which was incompatible with- the intervening rights acquired by virtue of the garnisheement.
In reaching this, conclusion, I have aot been unmindful of what has-been said in reference to the commercial character of such instruments, and the consequent right and consequent risks of those who subsequently purchase them without notice of- the intermediate proceedings! alluded to. No such question properly arises in this case—the subsequent endorsee having taken the bill merely for collection and disbursement—but were it otherwise, I am inclined to the opinion that the safest and soundest rule for the due protection of all parties, whether conventional or legal, is the one intimated in this dissent,.